UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ADRIAN BETH CALKINS,

                Plaintiff,

v.                                                                            Case No. 5:08-cv-450-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability, disability insurance benefits and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 16 & 17.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED** under sentence four of 42 U.S.C. §405(g).

## I. PROCEDURAL HISTORY

On April 3, 2006, Plaintiff filed applications for a period of disability, disability insurance benefits and supplemental security income, alleging a disability onset date of January 13, 2006. (R. 14, 410-11.) Plaintiff's applications were denied initially and upon reconsideration. (R.22-33, 50-56, 399-409.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R.49, 414.) The ALJ conducted Plaintiff's administrative hearing on June 10, 2008. (R. 415-36.) The ALJ issued a decision

unfavorable to Plaintiff on July 23, 2008. (R. 14-21.)  Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals (R. 10A) was denied.  (R. 7-10.)  Plaintiff then appealed to this Court. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1]  Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

At the time of the hearing, Plaintiff was forty-one (41) years old. (R. 418.) She has a high school education and has worked as a CNA/Home Health Aide and a supervisor. (R. 418-19.) Plaintiff worked until January 13, 2006, at which point she claims she was no longer able to work, due to neck pain, leg pain, falling often when her legs "lock up", and migraine headaches. (R. 421, 435.)

Plaintiff has a long history of migraine headaches and a seizure disorder for more than 15 years. (R. 234-35.) A brain CT scan on March 7, 2005 was normal. (R. 295.) In October 2000, Plaintiff first injured her back, with radicular symptoms in both legs, when she slipped at work and fell, rupturing two discs in her lower back. (R. 195, 422.) In

---

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

5

July 2001, Plaintiff underwent lumbar fusion surgery at L4-5 and metal hardware was placed in her back. (R. 193-94, 422)  One year later, the hardware was removed from her back due to infection and because it was no longer needed.  (R. 214.)  Over the next three years, Plaintiff was treated by Marianande Kumar, M.D. for a number of complaints, including: in 2003, rib pain, chest and kidney pain and lower back pain (R. 260, 262, 266); in 2004, ankle pain, chest pain, headache, back pain, and rib pain (R. 253, 256, 258-59); and in 2005, headache, right arm pain, fatigue, and left side muscle spasms (R. 247, 249-50.)

On September 10, 2005, Plaintiff flipped a riding lawn mower while at work, injuring her lower back, right shoulder, left wrist, and left ankle. (R. 300, 320, 324, 424, 435.)  Plaintiff reported that prior to the lawn mower accident, her back was symptom free. (R. 344.)  She was treated at the Citrus County Health Department. (R. 324-57.) On January 13, 2006, Rolf C. Lyon, M.D., a doctor at the Citrus County Health Department wrote on a prescription note that for six months (January 13, 2006 through July 13, 2006), Plaintiff was limited to lifting "one feather (small bird)." (R. 357.)  On January 24, 2006, Plaintiff had a MRI of the lumbar spine. (R. 327.)  Other than evidence of prior disc surgery at L4-L5, there was no evidence of a herniated disc, lumbar spinal stenosis or significant lumbar spinal canal compromise.

On March 6, 2006, Plaintiff was seen by Oregon K. Hunter, M.D., for an initial office visit. (R. 300-05.)  Dr. Hunter reviewed the January 24, 2006 MRI of the lumbar spine and noted degenerative disc disease with bulging at L4-5 and laminectomy at L4-5.  Dr. Hunter noted that Plaintiff was unable to walk in the exam room without holding on to furniture or him or using her quad cane and that she favored her left lower

6

extremity when ambulating. On examination, Plaintiff had good range of motion of the cervical spine; but restricted range of motion of the lumbosacral spine with extension, flexion and side bending. There was no swelling, instability, atrophy or abnormal movement in the upper and lower extremities. Plaintiff's motor strength was 5/5 in the upper and lower extremities with the exception of decreased dorsiflexion to the left foot. Dr. Hunter did not prescribe medications because Plaintiff has multiple allergies and is unable to tolerate pain medications. He opined that she could perform "sedentary to light level of lifting and carrying" and did not assign any other activity limitation or restriction.

On July 18, 2006, D. Barry Lotman, M.D. performed an independent medical evaluation in orthopedics. (R. 343-47.) On examination, Dr. Lotman observed a full cervical range of motion with slight discomfort upon rotation; normal symmetric strength and sensation in the upper extremities; normal lumbar curvature; low back pain upon gentle palpation; absence of weakness during heel and toe walking; negative straight leg raise test bilaterally; and several signs of symptom magnification. Dr. Lotman opined that Plaintiff's prognosis was "good" and that she could return to work with the following restrictions: (1) no overhead lifting; (2) no carrying of any weight at arm's length; (3) no repetitive pushing and pulling; (4) no lifting more than 30 pounds; (5) no sitting or standing more than an hour at a time; (6) no climbing, crawling, kneeling or squatting.

7

On May 17, 2006, a Physical Residual Functional Capacity Assessment was completed by Donald Morford, M.D., a non-examining state agency physician. (R.310-17.) Morford found that Plaintiff could occasionally lift and/or carry 10 pounds; frequently lift and/or carry 10 pounds; stand and/or walk at least 2 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; and push without limitation. Morford found that Plaintiff should never climb ladder/rope/scaffolds; should only occasionally climb ramp/stairs, balance, stoop, kneel, crouch and crawl; and should avoid concentrated exposure to hazards. Dr. Morford noted that Plaintiff's use of a cane was "not supported by her attending physician exam in January 2006." (R. 315.) On September 27, 2006, Audrey Goodpasture, M.D., made the same findings regarding Plaintiff's RFC, except that Plaintiff should avoid moderate, rather than concentrated, exposure to hazardous machinery and heights. (R. 329-36.)

An MRI of the right shoulder on January 29, 2007 showed no evidence of acute bone bruise or fracture and a suspected full thickness tendon tear within the rotator cuff. (R. 350-51.)

From November 2007 through May 2008, Plaintiff was treated by Tara Connor, DO at Inverness Family Care. (R. 371-79.) Dr. Connor noted Plaintiff's complaints of back pain, neck pain and rotator cuff pain (R. 375, 379), pain between shoulder blades and neck stiffness (R. 378), seizures (R. 379), leg and neck spasms that felt "like mini-seizures" (R. 374-75), hip pain (R. 373) and sinus infection with headache, cough and sore throat. (R. 376.) On January 23, 2008, Plaintiff had a cyst removed from her back. (R. 383.) On May 22, 2008, Dr. Connor noted that Plaintiff had gone to the emergency room for pain in her left foot, left hip, and lower back and that she needs to use a cane.

(R. 371.)  Other than recommending that Plaintiff quit smoking (R. 376), Dr. Connor did not assign Plaintiff any activity limitations or restrictions. On May 28, 2008, Dr. Connor referred Plaintiff to Dr. Stanley for her seizure disorder (R. 367), but there are no records from Dr. Stanley in the record before the Court.

    At the hearing, Plaintiff testified that she has high blood pressure and heart palpitations.  (R. 425-26.)  She also testified that she has been having seizures since she was 21 years old and that they were controlled with medication for the most part until weeks before the hearing when she started having petit mal seizures at least four times per week. (R. 426-27.)  Plaintiff reported using inhalers and nebulizer treatments twice a day for asthma. (R. 427.)   Plaintiff was using a cane because she contracted a leg infection and her hip keeps dislocating. (R. 428.)  Plaintiff testified that due to her pain and muscle spasms she can sit for about 15 minutes at a time; stand about 15 minutes at a time; and walk a block or two. (R. 428.)  Plaintiff cannot bend at the waist, cannot bend at the knees, and is unable to lift overhead. (R. 429.)  Plaintiff reported trouble sleeping due to pain and that she sleeps between two and four hours at night. (R. 429-30.)  Plaintiff testified that she needs help getting dressed due to her back and shoulders. (R. 430-31.)  Plaintiff reported migraines at least five days per week, that result in her vomiting and she has to lay down and sleep.  (R. 431.)  Plaintiff has trouble concentrating because she cannot sit still due to pain. (R. 431.)  On a scale of one to ten, her daily average pain is an eight; she has daily stabbing pain in her back all the way through her hips and through the bottom of her feet, as well as stabbing pain in her right shoulder. (R. 432-33.)  Plaintiff testified that medicine does not get rid of the pain and that she vomits at least five days out of a week due to the pain. (R. 433-34.)  She

9

also reported numbness in her right hand and swelling in her feet, legs and hands. (R. 433.) Plaintiff testified that she spends a lot of her day laying down, and she has two bed sores on her upper hip. (R. 433-34.)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff had hypertension, seizure disorder, torn rotator cuff, and degenerative disc disease. (R. 16.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (R. 18.)

The ALJ then found that Plaintiff retained the RFC to perform a full range of sedentary work (R. 18-20), but that she could not perform her past relevant work as a certified nurse aide. (R. 20.) After concluding that Plaintiff could perform a full range of sedentary work, the ALJ applied Rule 201.28, which directed a finding of not disabled. (R. 21.) The ALJ did not consult a VE.

## IV. **DISCUSSION**

### A. **The ALJ's RFC assessment is supported by substantial evidence**

Plaintiff challenges the ALJ's RFC assessment on two principal grounds – i.e., that the ALJ failed to properly consider opinion evidence and that the ALJ failed to develop a full and fair record. Neither of these arguments have merit.

First, Plaintiff argues that the ALJ failed to properly consider the treatment records from Plaintiff's primary treating sources, the Citrus County Health Department and Dr. Connor. Although Plaintiff contends that the ALJ "disregarded the opinions of

10

[her] treating and examining sources, Plaintiff fails to identify any opinion that the ALJ rejected, and instead, merely recites various complaints and diagnoses noted in the treatment records. Indeed, except for a lifting restriction for six months in 2006, and a recommendation that Plaintiff quit smoking, neither the Citrus County Health Department nor Dr. Connor noted any other activity limitations or restrictions.

Moreover, the ALJ's RFC finding is consistent with the sedentary limitations opined by examining physician, Dr. Hunter (R. 305) and the two non-examining state agency doctors, Dr. Morford and Dr. Goodpasture. (R. 311-14, 330-33.) Dr. Lotman, who examined Plaintiff on one occasion, and opined that Plaintiff had a "good" overall prognosis found that Plaintiff had slightly greater restrictions compared to those found by Dr. Hunter and the state agency doctors. However, one-time examiners are not considered treating physicians; and thus, their opinions are not entitled to deference.[22] Further, as the ALJ noted, Dr. Lotman found that Plaintiff exhibited several signs of exaggerated symptoms and limitations. Therefore, the ALJ properly afforded great weight to the sedentary limitations found by the state agency doctors – and in the absence of any evidence of additional activity limitations or restrictions – substantial evidence supports the ALJ's assessment of Plaintiff's RFC. [23]

---

[22] Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004.)

[23] Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998)(given the absence of activity limitations or restrictions, substantial evidence supported ALJ's finding that claimant could perform a full range of sedentary work.)

Second, Plaintiff asserts that the ALJ failed to develop a full and fair record. It is well-settled that an ALJ has a basic obligation to fully and fairly develop the record.[24] This obligation exists whether or not a claimant is represented by counsel.[25] As a hearing is non-adversarial in nature,[26] the duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.[27] The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision.[28]

Here, Plaintiff argues that the ALJ should have ordered a consultative exam or further clarified her medical condition because the ALJ's decision "clearly reflects that the ALJ did not agree with any of the evidence after 2006 or felt that it was incomplete."[29] However, Plaintiff has failed to identify any post-2006 evidence that the ALJ purportedly disagreed with or deemed incomplete. Moreover, the ALJ summarized the relevant medical evidence from 2007 and 2008, and in doing so, he did not reject any of the post-2006 evidence nor did he find any ambiguity or evidentiary gaps in the record. Because Plaintiff has failed to show any evidentiary gap, conflict, or ambiguity in the record that resulted in clear prejudice, a consulting exam was not required.

---

[24] See Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); see also Zaldivar v. Apfel, 81 F. Supp. 2d 1353, 1359 (N.D. Ga. 2000).

[25] Zaldivar, 81 F. Supp 2d at 1359.

[26] Id.

[27] See Mason v. Barnhart, 63 Fed. Appx. 284, 2003 WL 1793283, *2 (9th Cir. 2003).

[28] See Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984.)

[29] Doc. 16 at 4.

Indeed, Plaintiff can only speculate that a consultative exam would support – and not refute --her disability claim.

Plaintiff also argues that her alleged onset date – January 13, 2006 – is somehow inconsistent with the record, requiring additional development pursuant to SSR 83-20. However, SSR 83-20 is only applicable when an ALJ finds a claimant disabled under the Act.[30] The ALJ found that Plaintiff was not disabled; thus, SSR 83-20 does not apply to her claim. Moreover, even if SSR 83-20 is considered, further development of the record as to onset date is not required because no ambiguity or deficiency in the medical evidence has been identified.[31]

Accordingly, the ALJ developed a full and fair record, and substantial evidence supports his RFC assessment.

**B. The ALJ's finding that Plaintiff can perform other jobs that exist in significant numbers nationally is supported by substantial evidence**

Because the ALJ found that Plaintiff could not return to her past relevant work, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists in the national economy.[32] The burden of showing by substantial evidence that a person who can no longer perform her former job can engage in other substantial gainful activity is in almost all cases satisfied only through

---

[30] See Scheck v. Barnhart, 357 F.3d 697, 701 (7th Cir. 2004); Key v. Callahan, 109 F.3d 270, 274 (6th Cir. 1997).

[31] See McManus v. Barnhart, 2004 WL 3316303, at *6-7 (M.D. Fla. 2004)(further development is required only when "the medical evidence of record is ambiguous or inadequate.")

[32] See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

the use of vocational expert testimony.[33] It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.[34]

In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.[35] This burden may sometimes be met through exclusive reliance on the "grids."[36] However, exclusive reliance on the "grids" is not appropriate "*either* when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."[37] If either condition exists, the ALJ is required to consult a vocational expert.[38]

In this case the ALJ found that Plaintiff had the RFC to perform a "full range of sedentary work." (R. 18.) In determining whether sedentary jobs exist in significant numbers nationally, the ALJ utilized the Grids, and did not consult a vocational expert. Plaintiff argues that the ALJ was required to consult a vocational expert. However, in her brief, Plaintiff does not identify any specific non-exertional limitations caused by her impairments nor does she identify any activities required by sedentary work that she is

---

[33] See id.

[34] See id.

[35] See Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).

[36] Foote, 67 F.3d at 1558.

[37] See Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004)(quoting Francis v. Heckler, 749 F.2d 2565, 1566 (11th Cir. 1985.)

[38] See id.

14

unable to perform as a result of her impairments.   And to the extent Plaintiff challenges the ALJ's determination of her RFC, as discussed above, there is substantial evidence in the record to support he ALJ's conclusion that Plaintiff retain the RFC to perform the exertional demands of a full range of sedentary work.  Accordingly, because Plaintiff's impairments did not erode the work base for sedentary work, the ALJ did not err in applying the grids, instead of using a VE.

In addition, Plaintiff's claim that the ALJ was required to consult a vocational expert to identify "what specific job titles she may qualify for given her age, education, work experience, and residual functional capacity"[39] is without merit.  When the grids are properly employed – as they were in this case – the Commissioner is not required to introduce evidence of specific available sedentary jobs that Plaintiff can perform.[40]

Accordingly, the ALJ did not err by relying exclusively upon the grids.

## V.  CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).  The Clerk is directed to enter final judgment consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on February 12, 2010.

_____
GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel

---

[39] Doc. 16 at 6

[40] See 20 C.F.R. pt. 404, subpt. P, app. 2, §200.00(b); Heckler v. Campbell, 461 U.S. 458, 468-70, 103 S.Ct. 1952, 1958-59 (1983).

15